IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NADEAN CARDEN,

        Plaintiff,

v.

CAROLYN W. COLVIN,

        Defendant.

CIVIL ACTION
NO. 14-3120

**OPINION**

**Slomsky, J.**                                                                                                                             **January 20, 2016**

## I.   INTRODUCTION

Before the Court are the Objections of Plaintiff Nadean Carden to Chief United States Magistrate Judge Linda K. Caracappa's Report and Recommendation. (Doc. No. 18.) On June 5, 2014, Plaintiff filed a Complaint against Defendant Carolyn W. Colvin, the Commissioner of the Social Security Administration, alleging that Defendant wrongfully denied Plaintiff disability insurance benefits ("DIB") under Title II of the Social Security Act. (Doc. No. 3.) On January 6, 2015, the Court referred the case to Magistrate Judge Caracappa for a Report and Recommendation ("R&R"). (Doc. No. 16.) On June 26, 2015, Magistrate Judge Caracappa issued the R&R (Doc. No. 17), and on July 10, 2015, Plaintiff filed timely Objections (Doc. No. 18). After an independent review of the record, and for the reasons that follow, the Court will adopt the R&R.

## II.  BACKGROUND

### A.   Factual and Procedural History

On May 20, 2011, Plaintiff filed an application for DIB related to an alleged disability beginning on August 18, 2009. (Administrative Record ("R.") at 182.) This application was

1

denied by the Regional Commissioner, Laurie Watkins, on September 22, 2011. (R. at 103.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 110.)

On January 2, 2012, ALJ Jack Penca held a video hearing and heard testimony from an impartial vocational expert, a character witness,[1] and Plaintiff, who was represented by counsel. (R. at 30.) Also before the ALJ was the statement of Plaintiff's son (R. at 21) and medical evidence from Plaintiff's treating physicians (R. at 18-20). The ALJ issued an opinion on January 25, 2013, finding that Plaintiff was not disabled under the terms of the Social Security Act from August 18, 2009, the alleged start of the disability, through the date of his decision. (R. at 10-23.)

Plaintiff filed a request for review, and on January 25, 2013, the Appeals Council denied Plaintiff's request, making the ALJ's decision the final decision of the Commissioner. (R. at 7.) Plaintiff appealed that decision to this Court by filing the Complaint on June 5, 2014. (Doc. No. 3.) On January 6, 2015, the Court referred the case to Magistrate Judge Caracappa for an R&R. (Doc. No. 16.) As noted, on June 26, 2015, Magistrate Judge Caracappa issued an R&R recommending that Plaintiff's request for review be denied. (Doc. No. 17.) On July 10, 2015, Plaintiff timely filed the Objections that are now before this Court for consideration. (Doc. No. 18.)

### B. Disability Determinations Under the Social Security Act

To prove a "disability," a claimant must demonstrate "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

---

[1] In Magistrate Judge Caracappa's R&R, the character witness's name is spelled two ways. It is spelled as Dina Yurgi and also as Dina Yergey. The Court will refer to the character witness as Dina Yergey.

period of not less than 12 months." 20 C.F.R. § 404.1505(a).  When evaluating a disability, the Social Security Administration uses a five-step process, which is followed in a set order:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

Id. § 404.1520(a)(4)(i)–(v).

Between the third and fourth steps, the Social Security Administration assesses a claimant's residual functional capacity, which is "the most [a claimant] can do despite [their] limitations."  Id. § 404.1545(a)(1).  The Social Security Administration uses the residual functional capacity ("RFC") assessment at Step Four to determine if the claimant is able to do their "past relevant work."  Id. § 404.1545(a)(5)(i).  "Past relevant work" is "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  Id. § 404.1560(b)(1).

In this case, after reviewing the evidence in the record and considering Plaintiff's impairment, the ALJ determined that her RFC was for sedentary work, with the need for Plaintiff

to alternate intermittently between sitting and standing. (R. at 15.) The vocational expert ("VE") testified that an individual of Plaintiff's age, education, and work history, who can perform sedentary work with an option to alternate between sitting and standing, could perform a significant number of jobs in the national economy. (R. at 21.) The ALJ accepted the testimony of the VE and determined that Plaintiff was capable of performing past relevant work as a caseworker, as well as other jobs. (R. at 21.) Therefore, Plaintiff had not been under a "disability," as defined by the Social Security Act, since August 18, 2009. (R. at 23.)

### III. LEGAL STANDARD

When reviewing a final decision of the Commissioner of Social Security, the Court must determine whether the record demonstrates substantial evidence to support the Commissioner's decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla . . . [and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 F. App'x 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)). The Commissioner's findings of fact, as long as they are supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

Because the Commissioner adopts an ALJ's decision as his findings of fact, the ALJ must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); see 42 U.S.C. § 405(b)(1). An ALJ must consider, evaluate, and refer to specific medical evidence in the record in his decision. See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d Cir. 2003). Based on the evidence, an ALJ determines whether a claimant proved a "disability," and the Commissioner adopts this decision as her finding of facts. Even if the record offers evidence that undermines the ALJ's conclusion, the Court will not overrule the decision of the ALJ unless that evidence is substantial. Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate," not "a mere scintilla." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)). If the ALJ's decision is supported by substantial evidence, the court may not set the decision aside, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

## IV. THE ALJ'S DECISION

The ALJ made the following findings with respect to Plaintiff's disabilities. Applying the five-step sequential process, the ALJ determined that Plaintiff had not been under a "disability," as defined by the Social Security Act, from August 18, 2009 to January 25, 2013, the date of the ALJ's decision. (R. at 23.) Looking at the first prong—whether Plaintiff "is engaging in substantial gainful activity"—the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since August 18, 2009. (R. at 12.) With respect to the second prong—whether Plaintiff has a severe medically determinable physical or mental impairment that meets the duration requirement—the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, sleep apnea, obesity, and asthma. (Id.) The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments that constitutes one of the listed impairments that would require a finding of disability. (R. at 30.) In making this decision, the ALJ considered all evidence in the record, including the opinions of treating physicians Joel Eisner M.D. and Niteesh Bharara M.D., and non-treating physician Theodore C. Waldron, a Doctor of Osteopathic Medicine. (R. at 574-76, 463-67, 91-93.)

At Step Four—considering an assessment of Plaintiff's residual functional capacity ("RFC") and ability to complete past relevant work—the ALJ found that Plaintiff had the RFC to

perform sedentary work, but she would need to alternate intermittently between sitting and standing. (R. at 15.) Finally, at Step Five—considering whether Plaintiff is capable of performing past relevant work or other work—the ALJ found Plaintiff was capable of performing past relevant work as a caseworker. (R. at 21.) The ALJ further found there were other jobs that exist in the national economy that Plaintiff could perform. (Id.). Therefore, as noted, the ALJ determined that Plaintiff had not been under a "disability," as defined by the Social Security Act, from August 18, 2009 to January 25, 2013. (R. at 23). Therefore, she was not entitled to disability benefits.

## V. DISCUSSION

On June 26, 2015, after considering the ALJ's opinion and the Administrative Record, Magistrate Judge Caracappa issued an R&R finding that there was substantial evidence to support the ALJ's denial of benefits. (Doc. No. 17.) Plaintiff has made four Objections to the R&R. (Doc. No. 18). Although the Objections are identical to the claims asserted in Plaintiff's Complaint, they are nonetheless entitled to de novo review by this Court. Brown v. Astrue, 649 F.3d 193 (3d Cir. 2011).

First, Plaintiff contends that the ALJ erred by failing to find Plaintiff disabled, and by failing to include a sit/stand option in the hypothetical question posed to the VE. (Doc. No. 18 at 1.) Second, Plaintiff argues that the ALJ erred by concluding that Plaintiff had no "severe" mental impairment, and by failing to include any mental limitations in his assessment of Plaintiff's RFC. (Id. at 3.) Third, Plaintiff claims that the ALJ improperly rejected medical opinion evidence from a treating physician. (Id. at 6.) Finally, Plaintiff asserts that the ALJ improperly rejected non-medical evidence without providing good reason or adequate explanation. (Id. at 8.) The Court will discuss each Objection in turn.

### A. The Hypothetical Question Posed by the ALJ Was Proper

` Plaintiff argues that the ALJ erred in finding Plaintiff not disabled at Step Five because, in his hypothetical question, the ALJ did not specify how frequently Plaintiff would need to alternate between sitting and standing. Plaintiff contends that the ALJ's failure to be specific violated Social Security Ruling ("SSR") 96-9p.[2] Plaintiff further argues that the ALJ's hypothetical question was too vague. According to Plaintiff, this resulted in the VE's improper interpretation of the question. (Doc. No. 18 at 1.)

In order for a VE's testimony to provide an appropriate basis for the ALJ's decision, the ALJ must pose a hypothetical question that sets forth all possible limitations the ALJ has found. Plummer, 186 F.3d at 431. If a VE's testimony in response to a hypothetical question fairly sets forth every credible limitation established by the evidence, the testimony is substantial evidence of non-disability and satisfies the Commissioner's burden at Step Five. Id. During Plaintiff's hearing, the following exchange took place between the ALJ and the vocational expert:

> Q: [A]ssume an individual of [Plaintiff's] age, education, and work history, who can perform work at the sedentary level with jobs that permit alternating sitting and standing . . . Could such an individual perform any of [Plaintiff's] past relevant work?
>
> A: Your Honor, could you give me more detail on the sit/stand option, please?

---

[2] SSR 96-9p addresses alternate sitting and standing as follows:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185, at *7.

> Q: There is no particular timeframe involved, just that the job would provide for the alternate sitting and standing.
>
> A: It would be my opinion that if the sit/stand were intermittent and the individual, for instance, could stand for periods of time while doing the interview—and I believe such an individual could do that since there is only occasional use of the upper extremities; [Plaintiff] has not been chair bound – that such an individual could carry out the work of a caseworker . . .

(R. at 62.)

In support of her first Objection, Plaintiff argues that the limitation to alternate sitting and standing "at will" would be sufficiently specific only when interpreted as a job that allows an individual to sit or stand as often as they would like, without limitation. (Id.) According to Plaintiff, "[a] limitation to alternating sitting and standing 'at will' does not even arguably provide specificity unless it is interpreted as requiring a suitable job to allow the individual to change position whenever desired *no matter how often that is*, even if it is every few seconds. Constant motion precludes competitive employment as a matter of simple common sense." (Id. (emphasis in original).) Thus, Plaintiff argues that "at will" is not adequately specific to describe the sit/stand option because such constant motion is disabling "as a matter of common sense." (Id.)

Courts have been confronted with similar objections in which a plaintiff suggests that "at will" frequency is not specific enough to meet the requirements of SSR 96-9p. A residual functional capacity assessment that permits a claimant to sit or stand "at will" may not be "totally compliant with the strictest interpretation of SSR 96-9p but [courts] have generally found the inclusion of such a limitation to be harmless error." Keys v. Colvin, No. 3:14-CV-1913, 2015 WL 1275367, at *12 (M.D. Pa. Mar. 19, 2015).

Here, the "reasonable implication of the ALJ's description is that [Plaintiff] could choose between sitting or standing at will." See Keys, 2015 WL 1275367, at *12. The ALJ's hypothetical question incorporated all of Plaintiff's credibly established limitations supported by the record. The VE interpreted the hypothetical question to include work which could be performed "intermittently" with a sit/stand option, with no limitations on the exercise of that option. (R. at 62.) As such, even if the ALJ did not state the specific frequency with which the hypothetical claimant would need to alternate between sitting and standing, the VE was able to identify occupations that included an option to sit or stand at will. Thus, Plaintiff's first Objection will not be sustained.

**B.   The ALJ Did Not Err by Finding Plaintiff Did Not Have a "Severe" Mental Impairment and by Failing to Include Mental Limitations in His Residual Functional Capacity Assessment**

Plaintiff next argues that the ALJ erred by finding that Plaintiff had no "severe" mental impairment, and by failing to include mental limitations in his assessment of Plaintiff's RFC. (Doc. No. 18 at 3.) According to Plaintiff, the ALJ did not adequately explain his reliance on the state agency consultant's finding. (Id. at 4-5.) Additionally, Plaintiff argues that the ALJ discussed non-medical evidence in a manner that was "misleadingly selective" and did not consider the record as a whole. (Id. at 3.) Plaintiff also suggests that the ALJ erred by considering Plaintiff's limited treatment or lack of treatment sufficient to find her mental illness not severe. (Id. at 4.)

The Magistrate Judge thoroughly reviewed the ALJ's reasoning and found that substantial evidence supported the ALJ's determination that Plaintiff's mental impairment was non-severe. (Doc. No. 16 at 25.) With regard to Plaintiff's argument that lack of treatment is insufficient to find that an illness is not severe, the Magistrate Judge stated, "[a]n ALJ is permitted to consider a

9

claimant's treating history when evaluating whether a claimant is disabled; as such, the ALJ did not err in noting plaintiff's limited treatment when discussing the severity of plaintiff's mental health impairment." (Doc. No. 16 at 26.) This Court agrees and finds that substantial evidence supported the ALJ's findings. Furthermore, the ALJ explained his conclusions by citing records and testimony, including the testimony of the state agency consultant. (R. at 13, 90.) Because substantial evidence supported the ALJ's finding, he did not err by finding that Plaintiff did not have a "severe" mental impairment.

Plaintiff further argues that the ALJ erred by failing to consider her Global Assessment Functioning ("GAF") score of 50. GAF scores assess an individual's "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000). Though GAF scores alone do not necessarily indicate an impairment, they constitute "medical evidence accepted and relied upon by a medical source and must be addressed by an ALJ" in making a disability determination. Colon v. Barnhart, 424 F. Supp. 2d 805, 812 (E.D. Pa. 2006). Here, although the ALJ noted Plaintiff's GAF score of 55, Plaintiff objects to the ALJ's failure to consider a second GAF score of 50.[3] (Id. at 5.)

Courts have held that low GAF scores, standing alone, are never enough to satisfy a plaintiff's burden to show she is disabled. See Chetoka v. Colvin, No. CIV. A. 13-941, 2014 WL 295035, *13 (W.D. Pa. Jan. 27, 2014). "[W]here a claimant has not explained how the GAF score would have itself satisfied the requirements for disability in light of potentially contradictory evidence on record[,]" the ALJ's failure to include discussion about the GAF score

---

[3] The record reflects two GAF scores because Plaintiff was assessed on two different dates. Plaintiff's March 2011 GAF score was 55 and her June 2011 GAF score was 50.

is harmless error. Bracciodieta-Nelson v. Comm'r of Soc. Sec., 782 F. Supp. 2d 152, 165 (W.D. Pa. Apr. 27, 2011).

Here, Plaintiff did not make any attempt to demonstrate that her GAF score of 50 alone would have satisfied the requirement for a finding of disability. The ALJ's finding that Plaintiff does not have a severe mental impairment is supported by substantial evidence. Therefore, the ALJ's failure to reference the GAF score was harmless. For the foregoing reasons, Plaintiff's second Objection lacks merit.

      **C.    The ALJ Properly Rejected Medical Opinion Evidence from a Treating Physician**

Plaintiff next argues that the ALJ's conclusion that the opinion of treating physician Joel Eisner, M.D. is inconsistent with the medical record is unwarranted. (Doc. No. 18 at 6.) Plaintiff claims that the ALJ failed to point to evidence in the record that would contradict Dr. Eisner's opinion; therefore, the ALJ did not provide sufficient reason for rejecting Dr. Eisner's opinion. (Id. at 4-7.)

Generally, an ALJ must give great weight to a claimant's treating physician; however, an ALJ may discredit the treating physician's opinion if contradictory evidence appears in the record. See 20 C.F.R §§ 404.15227(c); Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). While a treating physician relies on his or her own personal records of a plaintiff's impairments, the record before the ALJ contains additional information that creates a more complete and accurate presentation of a plaintiff's impairments. Therefore, the ALJ is not bound by the opinion of any one treating physician, and can reject an opinion if there is a lack of support or a finding of contradictory evidence in the record. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011).

In this case, the ALJ considered all of the medical opinions in the record. In doing so, he accorded "great weight" to the opinion of Niteesh Bharara, M.D, who found that Plaintiff could lift two to ten pounds, stand and walk for three to four hours in an eight hour work day, and perform numerous other physical functions. (R. at 20-21, 91-92.) The ALJ found, "given [Plaintiff's] history of back and leg pain," Dr. Bharara's "exertional findings were more consistent with the medical record of evidence and took into consideration [Plaintiff's] subjective complaints." (R. at 21.) Additionally, the ALJ accorded "some weight" to the opinion of Theodore C. Waldron, a Doctor of Osteopathic Medicine, who stated, in part, that Plaintiff could lift and/or carry up to twenty pounds, and could stand and walk for four hours in an eight hour workday. (R. at 91-92.)

The weight that the ALJ accorded to Dr. Eisner's opinion was based on a comprehensive assessment of all relevant medical evidence in the record. Upon review of that evidence, the ALJ found that Dr. Eisner's opinion conflicted with other medical opinion evidence in the record as well as with his own preoperative evaluation notes.[4] For this reason, the ALJ did not accord his opinion the same weight as other, more consistent, medical opinions in the record. Thus, Plaintiff's third Objection is meritless.

### D. The ALJ Adequately Explained His Rejection of Non-Medical Evidence

In her final Objection, Plaintiff argues that the ALJ did not provide an adequate explanation for rejecting the non-medical testimony of Plaintiff, her son, and Ms. Yergey. (Doc. No. 18 at 8.) Plaintiff contends that the ALJ did not explain how the evidence of record supported his findings. (Id.) Plaintiff further contends that objective medical evidence alone

---

[4] Plaintiff argues that Dr. Eisner's evaluation notes were not part of the record. (Doc. No. 18 at 6.) However, several of Dr. Eisner's medical opinions in the record include treatment notes. (R. at 574-76.)

cannot justify rejection of testimony, and that the ALJ offered only vague and conclusory assertions to explain his adverse credibility findings.[5] (Id.)

An ALJ may evaluate a claimant's credibility. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983). To evaluate credibility, the ALJ may consider the internal consistency of a claimant's own statements, the medical evidence, a claimant's medical treatment history, and findings by a state agency or other program physician. 20 C.F.R. § 1529. Deference must be given to the ALJ's credibility determination as long as the ALJ discusses the issue and the ALJ's finding is supported by substantial evidence. Alvarez v. Sec'y of Health and Human Sevs., 549 F. Supp. 897, 899-900 (E.D. Pa. 1982).

Here, the ALJ determined Plaintiff's testimony was "not entirely credible." (R. at 16-21.) The ALJ noted that the objective medical evidence did "not support the extreme limitations" alleged by Plaintiff. (R. at 19.) The ALJ stated, in relevant part:

> There was no unusual anxiety or evidence of depression. Although [Plaintiff] disputed the reliability of [Dr. Bharara's] report, her treating sources' notes are consistent with Dr. Bharara's findings. Nothing in the recent record of evidence supports [Plaintiff's] alleged need for a cane. There are also no records in the current record of evidence to support [Plaintiff's] allegations of emergency room trips for migraine headaches.

(Id.) Therefore, the ALJ explained why he did not find Plaintiff entirely credible and supported this determination with substantial evidence in the record.

---

[5] Plaintiff also suggests that Magistrate Judge Caracappa's recommendation to deny Plaintiff's fourth claim is a violation of a fundamental principle of administrative law. (Doc. No. 18 at 3.) Plaintiff argues that to uphold an inadequately explained finding on the ground that it is supported by substantial evidence is inappropriate. Plaintiff claims that it is a foundational principle of administrative law "that a court may uphold agency action only on the grounds that the agency invoked when it took action." SEC v. Chenery Corp., 318 U.S. 80, 87 (1943). The Court finds Plaintiff's administrative law violation meritless because, as Magistrate Judge Caracappa found, the ALJ adequately fulfilled his duty to explain how the evidence of record supported his findings. This Court agrees that the ALJ's findings were supported by substantial evidence and, therefore, Plaintiff's administrative law argument is not persuasive.

Plaintiff also asserts that the ALJ did not provide good reason for rejecting the testimony of her son. (Doc. No. 18 at 8.) She argues that the ALJ failed to justify his finding that the son's statements were inconsistent with the medical record. (Id. at 17.)

The ALJ must consider and weigh all relevant evidence, including non-medical evidence. Burnett, 220 F.3d at 122. Non-medical evidence includes information from spouses, parents, other relatives, and friends. See SSR 06-03p, 2006 WL 2329939, at *2. In considering evidence from a non-treating medical source such as spouses, parents, friends, and neighbors, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." Id. at 6. When evaluating the testimony of the Plaintiff's son, the ALJ stated:

> [Plaintiff's] son submitted a written statement on his mother's behalf indicating that she has had issues due to swollen legs and right hip/back pain. [Plaintiff's] son said things "got really bad" after [Plaintiff] had her hip replaced again. . . . He claimed she has restarted medication for depression, but alleged it did not work well. The son's statement receives little weight, as it is not entirely consistent with the medical record of evidence. As mentioned above, various treatment notes during the current period of review show [Plaintiff] has improved with treatment and has several of her conditions under control with medication.

(R. at 21). As noted above, the ALJ's determinations were supported by substantial evidence in the record. He explained that Plaintiff's son's statement was inconsistent with the medical evidence on record. The ALJ addressed a specific inconsistency in which the son stated that his mother's medications had been ineffective, yet medical evidence from various sources indicated that Plaintiff's condition was kept under control through the use of medication.

Finally, Plaintiff argues that the ALJ failed to adequately explain his rejection of Ms. Yergey's testimony. (Doc. No. 18 at 8.) In support of this Objection, Plaintiff contends that the ALJ failed to include any mental limitations, brought to light by Ms. Yergey's testimony, in Plaintiff's RFC assessment. (Id.) Plaintiff further asserts that the ALJ did not adequately specify

the weight assigned to Ms. Yergey's credibility. (Id.) The ALJ provided the following summary of Ms. Yergey's testimony:

> In addition, [Plaintiff's] friend [Ms. Yergey] testified that she has known [Plaintiff] for the past 23 years. She alleged [Plaintiff] has had problems from the moment they met. She said [Plaintiff] had difficulty getting out of bed. She helps [Plaintiff] with taking her medication, doing housework, and bathing. She also drives [Plaintiff] places. She allegedly reminds [Plaintiff] of things on a constant basis. She said that she has taken [Plaintiff] to the hospital three or four times in the past year. She said [Plaintiff] only did minimal household chores. She claimed [Plaintiff] constantly cries.

(R. at 17.) Plaintiff is correct that the ALJ did not expressly state the weight accorded to Ms. Yergey's testimony. However, the ALJ discussed Ms. Yergey's testimony in light of all other relevant evidence in the record. Further, because Plaintiff's RFC assessment accounted for all of her established limitations, any error associated with the ALJ's failure to specify the weight accorded to Ms. Yergey's testimony was harmless.

For the foregoing reasons, the ALJ rejected the non-medical evidence with good reason and adequate explanation, and supported his findings with substantial evidence. Therefore, the Plaintiff's fourth Objection will not be sustained.

## VI. CONCLUSION

The ALJ's decision to deny Plaintiff disability insurance benefits is supported by substantial evidence in the Administrative Record. Accordingly, the Court will adopt Magistrate Judge Caracappa's R&R and overrule Plaintiff's Objections. Judgment will be entered in favor of the Commissioner.

An appropriate Order follows.